UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ROLAND IVONIN,

                Petitioner,                **DECISION AND ORDER**

        v.                                        6:25-CV-06673 EAW

PHILIP RHONEY, in his official capacity
as Acting Deputy Field Office Director,
Buffalo Field Office, U.S. Immigration &
Customs Enforcement, et al.,[1]

                Respondents.
_____

## INTRODUCTION

    Petitioner Roland Ivonin ("Petitioner" or "Ivonin") was taken into custody on November 14, 2025, by Immigration and Customs Enforcement ("ICE"). He is detained at the Buffalo Federal Detention Facility ("BFDF") in Batavia, New York.

    Pending before the Court is Ivonin's petition under 28 U.S.C. § 2241 (Dkt. 1) and Respondents' motion to dismiss (Dkt. 13). For the reasons set forth below, the petition is granted to the extent that Respondents must provide Petitioner a bond hearing before an

---

[1]     Respondents advise that Philip Rhoney is the Acting Deputy Field Office Director of the Buffalo Field Office of the United States Immigration and Customs Enforcement and thus he is substituted as Respondent in place of Joseph Freden pursuant to Federal Rule of Civil Procedure 25(d). (Dkt. 13-3 at 1). The Clerk of Court is directed to update the docket to reflect this substitution.

immigration judge ("IJ") in accordance with the procedures set forth herein, and Respondents' motion to dismiss is denied.

## BACKGROUND

### A. Factual Background

Ivonin is a Ukrainian national who was admitted to the United States on a visa in 2008. (Dkt. 1 at 1). He is married with a 16-year old U.S. citizen daughter. (*Id*. at ¶ 31). After arriving in the United States, he applied for asylum and the immigration court administratively closed the removal proceedings on September 8, 2016. (*Id.* at ¶¶ 1, 31). On or about November 19, 2017, Ivonin returned to the United States from a trip abroad, and he was placed on advanced parole through November 18, 2018. (*Id*. at ¶¶ 1, 31; Dkt. 10). On November 14, 2025, Petitioner was taken into custody and has been held since that time with no bond hearing. (Dkt. 1 at ¶¶ 1, 32).[2]

### B. Procedural Background

Represented by counsel, Ivonin filed his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 on November 18, 2025. (Dkt. 1). The same day, the Court directed Respondents to show cause as to why the Court's prior orders finding that noncitizens who are present in the United States without having been admitted or paroled are subject to detention under 8 U.S.C. § 1226 and not 8 U.S.C. § 1225(b)(2), would not direct that Ivonin be provided a bond hearing. (Dkt. 2).

---

[2] At oral argument, the parties confirmed that these facts are not in dispute and no evidentiary hearing is necessary to resolve any factual questions.

On November 20, 2025, Respondents filed a letter explaining the government's position that the facts in this case are distinguishable because Ivonin is being detained as an arriving alien. (Dkt. 5). Petitioner responded and disagreed, arguing that his petition was subject to the same framework as the Court's prior decisions. (Dkt. 6).

On November 20, 2025, Petitioner sought a TRO to prevent his transfer outside of the jurisdiction. (Dkt. 7). The Court temporarily enjoined Respondents from transferring Petitioner outside of the Western District of New York. (Dkt. 9). Consistent with the scheduling order issued by the Court at a November 21, 2025 conference with the parties (Dkt. 11), Respondents filed a motion to dismiss (Dkt. 13), Ivonin filed papers in opposition (Dkt. 14), and Respondents filed a reply (Dkt. 16). Oral argument was held before the undersigned on December 18, 2025, at which time the Court reserved decision. (Dkt. 18). Following argument, both parties provided additional submissions as discussed at the argument. (Dkt. 17; Dkt. 19).

## RELEVANT STATUTORY PROVISIONS

### Section 1225

Title 8 of section 1225 of the United States Code, is entitled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing." Section 1225(a)(1) entitled "Aliens treated as applicants for admission" states as follows:

> An alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) shall be deemed for purposes of this chapter an applicant for admission.

8 U.S.C. § 1225(a)(1). Section 1225(b)(1) entitled "Inspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled" applies to noncitizens initially determined to be inadmissible based on fraud, misrepresentation, or lack of valid documentation, as well as certain other noncitizens designated in the discretion of the Attorney General. Section 1225(b)(2) entitled "Inspection of other aliens" is a "catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)," *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018), and states as follows in subparagraph (A):

> Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A).

Further, pursuant to § 1182(d)(5)(A), noncitizens detained following inspection under § 1225 can be paroled into the United States "for urgent humanitarian reasons or significant public benefit," based on a "case-by-case" assessment by DHS. Parole under § 1182(d)(5)(A) may terminate "automatically" upon the noncitizen's "departure from the United States" or "at the expiration of the time for which parole was authorized," *see* 8 C.F.R. § 212.5(e)(1), or "upon written notice to the [noncitizen]," § 212.5(e)(2)(i). "[W]hen the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the

same manner as that of any other applicant for admission to the United States." 8 U.S.C. § 1182(d)(5)(A).

### Section 1226

Title 8 of section 1226 of the United States Code is entitled "Apprehension and detention of aliens." Section 1226(a) "sets out the default rule," *Jennings*, 583 U.S. at 288, and states as follows:

> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—
> (1) may continue to detain the arrested alien; and
> (2) may release the alien on--
>     (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
>     (B) conditional parole; but
> (3) may not provide the alien with work authorization (including an "employment authorized" endorsement or other appropriate work permit), unless the alien is lawfully admitted for permanent residence or otherwise would (without regard to removal proceedings) be provided such authorization.

Section 1226(c) "carves out a statutory category of aliens who may *not* be released under § 1226(a)" and addresses "several enumerated categories involving criminal offenses and terrorist activities." *Jennings*, 583 U.S. at 289.

## ANALYSIS

### A. Jurisdiction

At the outset, Respondents argue that the Court lacks jurisdiction over the petition pursuant to 8 U.S.C. §§ 1252(g) and 1252(b)(9). Because the Court has already addressed this argument in *Lieogo v. Freden, et al.*, No. 6:25-CV-06615 EAW, 2025 WL 3290694, at *2-4 (W.D.N.Y. Nov. 26, 2025), it relies on the reasoning set forth in that decision to support the conclusion that it possesses jurisdiction over the matters raised in Petitioner's petition and will not repeat the analysis here.

### B. Merits of Petition

As detailed in the decisions issued by the undersigned in *Quituizaca Quituisaca v. Bondi, et al.*, No. 25-cv-6527, 2025 WL 3264440 (W.D.N.Y Nov. 24, 2025) and *Lieogo*, 2025 WL 3290694, a "change in policy" by the current executive administration has led to noncitizens residing in this country to be held in custody without bond based on a law historically used to detain noncitizens stopped at the border (8 U.S.C. § 1225(b)(2)). This Court, like most to have considered the issue, concluded that the law does not allow for what Respondents claim, and that noncitizens who are present in the United States without having been admitted or paroled are not subject to mandatory detention under 8 U.S.C. § 1225(b)(2) but instead are subject to detention under § 1226, and thus entitled to a bond hearing.

Respondents argue that because Ivonin was inspected at a port of entry and paroled into the United States, the facts of his case materially differ from those individuals encountered within the interior of the United States after entering without inspection. They

- 6 -

contend that the Supreme Court's decision in *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103 (2020), holding that an alien who "is detained shortly after unlawful entry" is not treated, for due process purposes, as having "effected an entry" into the United States, but is instead treated as "on the threshold," just like "an alien detained after arriving at a port of entry," applies to Ivonin. *Id.* at 140.  In other words, they contend that Ivonin is and has always been an arriving alien and § 1225(b) provides no bond mechanism, and therefore his detention is mandated with no right to a bond hearing.

Ivonin challenges Respondents' argument, in no small part due to the incongruency between the current position Respondents take and their prior conduct, including when he was detained on November 14, 2025, and provided a Notice to Appear reflecting that he was being detained not as an arriving alien but rather as someone "admitted to the United States."  (Dkt. 13-2 at 7).  Only after the instant petition was filed did Respondents issue a superseding Notice to Appear (*id.* at 10) identifying Ivonin as an arriving alien, an exercise that Ivonin argues would have been unnecessary had he simply been re-detained as a paroled arriving alien. *Ruedo Torres v. Francis,* 25 Civ. 8408 (DEH), 2025 WL 3168759, at *3 (S.D.N.Y. Nov. 13, 2025) ("Respondents have, for three years, consistently treated Ms. Rueda Torres as subject to detention only as a matter of discretion under § 1226(a). They cannot reverse course now and claim that she is an arriving alien 'seeking admission' [to] the United States who is subject to mandatory detention under § 1225(b)."); *see also Alberto R.C. v. Murray*, No. 1:25-CV-01618-KES-SKO (HC), 2025 WL 3648143, at *4 (E.D. Cal. Dec. 16, 2025) ("Here, the government itself treated petitioner as a person who had entered and was already present in the country when they detained and released him.

This fact undermines respondents' attempt to apply the entry fiction doctrine. The government's actions in releasing petitioner subject to § 1226(a) are inconsistent with their claim that petitioner is subject to the entry fiction doctrine.").

But even more fundamentally, this Court agrees with other courts who have looked at this issue and concluded that in instances, as here, where a petitioner's re-arrest was *not* a continuation of the initial border encounter, but an independent decision to detain the individual after the expiration of his parole, the detention pursuant to that re-arrest arises under § 1226. In other words, suggesting that Ivonin is still on the threshold of entry into this country, based on his re-entry into the United States through parole which expired over seven years ago, stretches the "legal fiction" beyond reason.

For example, in *Campbell v. Almodovar*, No. 1:25-CV-09509 (JLR), 2025 WL 3538351, at *6 (S.D.N.Y. Dec. 10, 2025), the district court noted that mandatory detention under § 1225 is only be justified where "a noncitizen is: (1) an 'applicant for admission'; (2) 'seeking admission'; and (3) 'not clearly and beyond a doubt entitled to be admitted.'" (quoting 8 U.S.C. § 1225(b)(2)(A)). It concluded that upon the expiration of his parole, Campbell remained an "applicant for admission" despite having been paroled, but was no longer "seeking admission" at the time of his 2025 re-arrest and detention. *Id.* ("In sum, when DHS agents detained Campbell in 2025, he was no longer seeking to enter the country. He was already in — and had been for several years."). Accordingly, the district court determined that "Campbell's actual presence within the United States at the time of his 2025 re-arrest" renders his detention to be pursuant the provisions of § 1226(a), and not § 1225. *Id.* at *9.

Likewise, in a recent case from this district, United States District Judge Lawrence J. Vilardo noted that "[t]here is little question that when Cabrera Martinez first arrived at the border in March 2023, he was 'seeking admission'. . . [and] then was paroled into the country, which allowed him to remain here under parole's 'entry fiction.'" *Cabrera Martinez v. Marich*, No. 25-CV-1110-LJV, 2025 WL 3771228, at *5 (W.D.N.Y. Dec. 31, 2025). Judge Vilardo concluded, however, that the "entry fiction" ends once a person has been living in the country after parole expires. *Id.* at *6. He reasoned that "most of the cases upon which the government relies hold that being paroled into the country, or spending years here without any authority, does not entitle a noncitizen to any additional process in connection with an application to *enter* or *legally remain* here," "[b]ut that says nothing about whether the noncitizen might be entitled to be released while the application is pending, an issue of liberty far different from immigration status." *Id.*, at *8. The court ultimately held that "after careful consideration of this close question, this Court joins those courts that have found that an individual who has been living in the United States outside parole and is later apprehended is detained under section 1226." *Id.*, at *13.

Other courts within this Circuit have concluded similarly. *See e.g., Iza by Iza v. Larocco,* No. 2:25-CV-6915 (NJC), 2026 WL 31378, at *11-12 (E.D.N.Y. Jan. 5, 2026) ("Mr. Iza [who was previously released on humanitarian parole pursuant to Section 1182(d)(5)(A)] is an applicant for admission, but clearly he is not presenting himself at the border and was not recently apprehended just after entering, and thereby is not 'seeking admission' as required for mandatory detention under Section 1225(b)(2)"); *Qasemi v. Francis*, No. 25-CV-10029 (LJL), 2025 WL 3654098, at *11 (S.D.N.Y. Dec. 17, 2025)

("Putting these pieces together, the termination by expiration of Qasemi's parole returned him to the 'custody' of DHS pursuant to the INA. Because he was paroled, and because he is not an arriving alien, he is no longer subject to the mandatory detention provision of Section 1225(b)(1). The outcome of this textual analysis is ultimately simple: absent ongoing parole status, Section 1182 mandates that Qasemi be treated just as the INA would treat any noncitizen previously granted parole and living in the United States. Every court that this Court is aware of that has considered the question has determined the same." (collecting cases)); *Rodriguez-Acurio v. Almodovar*, __, F. Supp. 3d __, 2025 WL 3314420, at *18 (E.D.N.Y. Nov. 28, 2025) (concluding that "[s]ection 1182(d)(5)(A) may permit the petitioner to be returned to ICE custody, but her case, which necessarily includes the procedures required before detention, 'shall continue to be dealt with in the same manner as that of any other applicant for admission,' 8 U.S.C. § 1182(d)(5)(A), and any other applicant for admission residing in the United States for more than three years would be detained under [s]ection 1226" (citation modified)); *see also Daza v. Albarran*, No. 25-CV-10214-RFL, 2026 WL 81518, at *4 (N.D. Cal. Jan. 12, 2026) ("At the time of her November 2025 detention, [following expiration of her parole] Petitioner was not an arriving noncitizen seeking entry into the country and had been living here for one year. Accordingly, she was not seeking admission at the time of her detention, so Section 1225(b)(2)'s mandatory detention provision does not apply."); *Abdirashid v. Noem,* No. 25-4779 (JRT/EMB), 2026 WL 127698, at *3 (D. Minn. Jan. 9, 2026) ("[T]he Court concludes that § 1225(b)(1)(B)(ii), which provides for the initial mandatory detention of noncitizens subject to § 1225(b)(1) who are found to have a credible fear of persecution in

their home country, does not authorize the mandatory detention of that noncitizen once they have been paroled into the country and released. To the extent that Petitioner's present detention is authorized by federal statute, it is pursuant to the discretionary detention scheme under § 1226(a)."); *Montiel v. Raycraft*, No. 1:25-CV-1610, 2026 WL 32076, at *2 (W.D. Mich. Jan. 6, 2026) (rejecting argument that petitioner was detained pursuant to § 1225(b)(2) despite the expiration of prior parole pursuant to 8 U.S.C. § 1182(d)(5) because "while § 1182(d)(5)(A) may permit Petitioner to be returned to ICE custody, there is 'nothing in this text that affirmatively authorizes. . . indefinite detention. . . [t]o the contrary, it provides that, when parole is revoked, 'the alien shall. . . be returned to the custody from which he was paroled and thereafter "*his case shall continue to be dealt with in the same manner as that of any other applicant for admission.*"' *Clark v. Martinez*, 543 U.S. 371, 386 (2005). For the reasons previously set forth in detail, the Court has concluded that § 1226(a), not § 1225(b)(2)(A), governs "any other applicant for admission" who has resided in the United States and was already within the United States when apprehended and arrested." (citation modified)); *Francois v. Noem,* No. CV 25-7334, 2026 WL 27565, at *3 (E.D. Pa. Jan. 5, 2026) ("Courts around the country have also found noncitizens who were paroled under § 1182(d)(5) are not subject to mandatory detention if they have been residing within the country for years. . . . The fact Francois had [Temporary Protected Status] which then expired also does not impact his petition. Courts in this district and around the country have found a petitioner's TPS status does not materially impact their right to habeas relief under similar circumstances.").

To be sure, some courts—at least outside this Circuit—have reached contrary conclusions. *See, e.g., Sanchez v. Soto*, No. CV 25-19082 (SDW), 2026 WL 125576, at *2 (D.N.J. Jan. 16, 2026) ("The record of this matter makes it clear that Petitioner was detained at the border as an 'arriving alien' under § 1225(b)(2). Her release on parole does not change that because Petitioner is treated legally as if she remained at the border for the duration of that parole. Petitioner thus remained subject to both the removal procedures, and accompanying mandatory detention, which applies to noncitizens detained under § 1225(b)(2) . . . . Petitioner's current detention is thus lawful, and Petitioner is not entitled to a bond hearing under the statute that governs [her] detention." (citation modified)); *Tenemasa-Lema v. Hyde*, No. CV 25-13029-BEM, 2025 WL 3280555, at *4 (D. Mass. Nov. 25, 2025) (concluding that expiration of parole did not preclude re-detention under section 1225 "because DHS's statutory power to 'return' Petitioner to custody under section 1225 at the expiration of his parole, see 8 U.S.C. § 1182(d)(5)(A), was not lost through DHS' inaction, [and] that remains a proper authority for his current detention"); *Chanaguano Caiza v. Scott*, No. 1:25-CV-00500-JAW, 2025 WL 3013081, at *7 (D. Me. Oct. 28, 2025) ("The Court concludes that Mr. Chanaguano Caiza was initially detained pursuant to § 1225(b)(2) and therefore, upon expiration of his parole, his status is restored to detention under that same statute.").

The undersigned acknowledges that this is a close issue. But after having carefully studied the matter, this Court finds the in-Circuit cases more persuasive. Thus, the undersigned concludes that neither the relevant statutes, Supreme Court or Second Circuit precedent, nor basic common sense, justify treating an individual like Ivonin who is present

in the United States after expiration of parole, any differently than an individual who entered the country without parole. Once Ivonin's parole expired and he remained in the United States, with no action by the government to remove him or otherwise take him into custody, the legal fiction treating him as at the threshold of entry no longer applied. And Respondents themselves endorsed that principle when they initially took him into custody, providing a Notice to Appear reflecting that he was detained not as an arriving alien but as someone "admitted to the United States." (Dkt. 13-2 at 7).

Therefore, this Court joins the majority of courts in concluding that petitioners such as Ivonin are subject to detention pursuant to § 1226. Accordingly, for this reason, the petition is granted to the extent that Petitioner seeks a bond hearing, and a bond hearing shall be conducted in accordance with the following terms:

1. Petitioner shall be granted a bond hearing before an immigration judge ("IJ") <u>on or before February 5, 2026</u>. If Petitioner requests a continuance that results in a bond hearing date outside this deadline, such a continuance will comply with this Order as long as the new date falls within a reasonable time period.

2. At this bond hearing, and consistent with this Court's prior determinations and applying the factors set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), to Petitioner's situation, *see Lieogo v. Freden*, No. 6:25-CV-06615 EAW, 2025 WL 3290694, at *4-6 (W.D.N.Y. Nov. 26, 2025), the government will have the burden to demonstrate dangerousness or flight risk by clear and convincing evidence. In deciding whether the government has met its burden of proof, the IJ must consider whether less-restrictive

alternatives to detention can reasonably address the government's interest in Petitioner's continued detention.

3. If the IJ finds that the government has not met its burden, then in setting any bond the IJ must consider Petitioner's ability to pay and alternative conditions of release.

4. Thus, in order to continue Petitioner's detention after any bond hearing, the IJ must find by clear and convincing evidence and make findings that no condition or combination of conditions of release can reasonably ensure Petitioner's appearance and the safety of the community—that is, even with conditions, Petitioner presents an identified and articulable risk of flight or a threat to another person or the community.

5. Respondents are directed to file a status update with the Court <u>on or before February 7, 2026</u>.

## CONCLUSION

For the foregoing reasons, the petition is granted to the extent that Petitioner seeks a bond hearing in accordance with the terms set forth herein, and Respondents' motion to dismiss (Dkt. 13) is denied.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: January 26, 2026
Rochester, New York